United States Court of Appeals,

Fifth Circuit.

No. 96-40667

Summary Calendar.

Dermot Patrick CARROLL, Plaintiff,

v.

THE JAQUES ADMIRALTY LAW FIRM, P.C., et al., Defendants,

Leonard C. Jaques, Defendant-Appellant.

April 18, 1997.

Appeal from the United States District Court for the Eastern District of Texas.

Before JONES, DeMOSS and PARKER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Leonard C. Jaques ("Jaques"), a practicing attorney and unsuccessful defendant in this fraud case filed by a former client, appeals the final order of the district court imposing sanctions for Jaques's conduct in his deposition. We agree with the district court that its inherent power to regulate court proceedings authorized the issuance of a monetary sanction against Jaques; further, Jaques's conduct warranted the $7,000 sanction imposed. We affirm the order of the district court.

BACKGROUND

In October 1994, Dermot P. Carroll filed suit against Jaques and his law firm, The Jaques Admiralty Law Firm, P.C., asserting several claims arising from the defendants' alleged negligent representation of Carroll in a lawsuit several years earlier. Because the district court held most of Carroll's claims barred by limitations, Carroll was allowed to pursue only his claim of actual fraud.

Carroll originally noticed Jaques's deposition for January 18, 1996; Jaques did not appear. Neither did Jaques attend a court-ordered mediation the next day. On February 1, the court conducted a show cause hearing to consider whether sanctions should be ordered against Jaques and his firm for ignoring the court-ordered mediation. At the show-cause hearing, Jaques, who lives in Michigan, made himself available to be deposed on that day. In spite of the last minute notice and

as an accommodation to Jaques, Carroll's counsel agreed to do so.

At his videotaped deposition, which lasted for more than four hours, Jaques threatened and cursed at Carroll's attorney. The following is a brief excerpt from the deposition testimony that exemplifies Jaques's egregious conduct:[1]

Q. So, you knew you had Mr. Carroll's file in the—

A. Where the f--- is this idiot going?

Q. —winter of 1990/91 or you didn't?

[DEFENDANTS' COUNSEL]: Nonresponsive. Objection, objection this is harassing. This is—

THE WITNESS: He's harassing me. He ought to be punched in the g--damn nose.

. . . . .

Q. How about your own net worth, Mr. Jaques? What is that?

[DEFENDANTS' COUNSEL]: Excuse me. Object also that this is protected by a—

THE WITNESS: Get off my back, you slimy son-of-a-bitch.

[PLAINTIFF'S COUNSEL]: I beg your pardon, sir?

THE WITNESS: You slimy son-of-a-bitch.

[PLAINTIFF'S COUNSEL]: You're not going to cuss me, Mr. Jaques.

THE WITNESS: You're a slimy son-of-a-bitch.

[PLAINTIFF'S COUNSEL]: You can cuss your counsel. You can cuss your client. You can cuss yourself. You're not going to cuss me. We're stopping right now.

THE WITNESS: You're damn right.

[PLAINTIFF'S COUNSEL]: We'll resume with Judge Schell tomorrow. Thank you.

THE WITNESS: Come on. Let's go.

[PLAINTIFF'S COUNSEL]: Good evening, sir.

THE WITNESS: F--- you, you son-of-a-bitch.

After Carroll filed a motion to compel Jaques to answer questions presented at his deposition

---

[1]A more thorough recitation of Jaques's sanctioned conduct appears in the district court's order. *See Carroll v. Jaques,* 926 F.Supp. 1282, 1285-87 (E.D.Tex.1996).

and to refrain from verbal abuse, the district court, on its own motion, noticed and conducted a show cause hearing to determine whether Jaques should be sanctioned for his abusive conduct at his deposition. The court considered imposing sanctions pursuant to FED.R.CIV.P. 37, but because plaintiff's counsel declined to file an affidavit setting forth his expenses and attorney's fees incurred, Rule 37 was inappropriate, as were other provisions that award fees or costs to the offended party.[2] Instead, relying on its inherent power, the district court imposed sanctions against Jaques in the amount of $7,000 to be paid to the Clerk of the United States District Court. *See Carroll v. Jaques,* 926 F.Supp. 1282, 1293 (E.D.Tex.1996).

Jaques appeals the court's order imposing sanctions, complaining that the district court abused its discretion by (1) resorting to its inherent powers to sanction Jaques, (2) failing to use the least severe sanction available, (3) finding that Jaques's behavior during the deposition constituted bad faith, (4) punishing speech protected by the First Amendment, and (5) assessing sanctions in the absence of clear and convincing evidence of sanctionable conduct.

DISCUSSION

We review the district court's imposition of sanctions for abuse of discretion. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 55, 111 S.Ct. 2123, 2138, 115 L.Ed.2d 27 (1991); *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1410 (5th Cir.1993), *cert. denied,* 510 U.S. 1073, 114 S.Ct. 882, 127 L.Ed.2d 77 (1994). When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions. *See Chambers,* 501 U.S. at 50, 111 S.Ct. at 2135-36; *Natural Gas Pipeline Co.,* 2 F.3d at 1406. "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Chambers,* 501 U.S. at 50, 111 S.Ct. at 2136.

No due process issue is raised here. Prior to imposing sanctions, the district court issued an order to show cause why sanctions should not be ordered against Jaques for his behavior and failure

---

[2] Rule 37, in part, permits the court to order the offending party or its attorneys or both to pay the opposing counsel's reasonable expenses and fees incurred as sanctions for the offending party's failure to make disclosures or to cooperate during discovery. *See* FED.R.CIV.P. 37(a).

to answer questions at his deposition. Before the hearing, Jaques filed and the court considered his Memorandum Opposing Sanctions. Jaques complains that the court questioned his credibility by relying on previous published court sanction orders against him, but the trial court hardly hinged its ruling on those cases, and we will not consider them.

After acknowledging that he should cautiously invoke the inherent power to sanction, the court ruled that sanctions were appropriate. The court found that Jaques's behavior of hurling "vulgar and profane words" at Carroll's counsel and threatening Carroll's counsel with an act of physical violence constituted bad faith:

> This abusive behavior disrupted the litigation (1) by forcing counsel for the Plaintiff to terminate the deposition and (2) by displaying blatant disrespect and contempt for the judicial processes of this court. Jaques's language was extremely offensive, threatening, and contumacious. No court can effectively dispose of cases when a party engages in such repugnant conduct in the course of pretrial discovery.

*Carroll,* 926 F.Supp. at 1289.

Finding Jaques to be a man of considerable wealth, the court concluded that a substantial sanction was necessary in order to deter him and those like him from future abusive behavior. The court credited certain mitigating circumstances, including Jaques's claimed fatigue at the deposition, his hypoglycemic condition, and the impact of his disruption upon the discovery process but not the entire litigation. An award of $7,000 was levied.[3] The court stated that this "sanction is large enough to deter Jaques from engaging in any future abusive conduct, yet the amount is lower than what it may have been if there were no mitigating circumstances." *Carroll,* 926 F.Supp. at 1292-93.

Contrary to Jaques's contention, the district court did not legally err or abuse its discretion in resorting to its inherent power to sanction Jaques for his behavior at his deposition. First, other statutes and rules, such as 28 U.S.C. § 1927, FED.R.CIV.P. 37, and the Eastern District of Texas Local Rules, do not squarely contemplate sanctions payable to the court for disruptive behavior. As plaintiff's counsel disclaimed any monetary sanction for the offense—a position justified explicitly by

---

[3]This figure was calculated by assessing fines of "$500 for each of the four times Jaques referred to Plaintiff's counsel as either an "idiot' or an "ass';  $1,000 for Jaques's suggestion during the deposition that Plaintiff's counsel "ought to be punched in the g--damn nose';  $1,000 for each of the three times Jaques called Plaintiff's counsel a "slimy son-of-a-bitch';  and $1,000 for Jaques's parting words to Plaintiff's counsel." *See Carroll,* 926 F.Supp. at 1293.

counsel's statement that money could not rectify the insult and, perhaps, implicitly by the hefty damage verdict his client won—the usual rules were not "up to the task." *Chambers,* 501 U.S. at 50, 111 S.Ct. at 2136. Second, FED.R.CIV.P. 83(b) does not bar the district court's use of its inherent power in this case.[4] Rule 83(b) ensures that litigants are not unfairly sanctioned for failure to comply with a local rule of the court or internal operating procedures or the like of which they are unaware. Rule 83(b) does not eliminate a court's inherent power to sanction, and it does not prevent sanction for failure to respond to deposition questions and intentional disruption of the discovery process—misconduct that is recognized in the rules, in common sense, and in respect for the court's processes.

Third, the court did not abuse its discretion in considering Jaques's conduct as constituting bad faith. "We find entirely appropriate the court's expectations of a heightened standard of conduct by a litigant who is also an attorney." *Coane v. Ferrara Pan Candy Co.,* 898 F.2d 1030, 1033 (5th Cir.1990). This court "adheres to the well established doctrine that "[a]n attorney, after being admitted to practice, becomes an officer of the court, exercising a privilege or franchise.' " *Howell v. State Bar of Texas,* 843 F.2d 205, 207 (5th Cir.) (quoting *Harkins v. Murphy & Bolanz,* 51 Tex.Civ.App. 568, 112 S.W. 136 (1908, writ dism'd)), *cert. denied,* 488 U.S. 982, 109 S.Ct. 531, 102 L.Ed.2d 563 (1988). "As officers of the court, attorneys owe a duty to the court that far exceeds that of lay citizens." *Id.* It is not acceptable for a party—particularly a party who is also an attorney—"to attempt to use the judicial system ... to harass an opponent in order to gain an unfair advantage in litigation." *Coane,* 898 F.2d at 1033. Neither is it a violation of his First Amendment right to be so sanctioned.

The finding of bad faith is predicated on a single point: Jaques knew better. Even if he was

---

[4]Rule 83(b) provides, in part:

> A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local district rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.

tired, hypoglycemic, and feeling put-upon by repetitive and, in his view, irrelevant questioning[5]—assumptions which are each dubious, as the district court observed—his condition was no excuse for abusive, profane, and pugnacious behavior in his deposition. Such conduct degrades the legal profession and mocks the search for truth that is at the heart of the litigation process. To assert, as does Jaques, that using vile language and fighting words during the course of an interrogation under oath do not constitute bad faith is almost as disrespectful of the legal process as his deposition conduct. Jaques's words and actions in the deposition did nothing to further its purpose and, indeed, subverted it to prevent his answering the questions asked. Through his counsel, Jaques could have acted within the rules to object to questions he thought improper. Profanity and threats are not a good faith substitute for either answering the questions or properly objecting.

Fourth, we agree with the district court that the fine imposed was the least severe sanction available. Fines like this have been imposed by other federal courts for similar offenses. *See, e.g., El-Gharabli v. INS,* 796 F.2d 935, 939-40 (7th Cir.1986) (affirming imposition of a $500 fine for misleading the court concerning the nature of a pending case and consistently violating court rules); *Kleiner v. First Nat'l Bank,* 751 F.2d 1193, 1209-10 (11th Cir.1985) (affirming imposition of $50,000 fine against attorney for intentional misconduct). Jaques's persistent misconduct during his deposition—challenging and insulting plaintiff's counsel, refusing to answer questions, cursing—necessitated additional court hearings and written interrogatories and thus burdened the court as well as his opponent. Jaques is presumed to have understood the impact of his contumacious approach. It is difficult to conceive of a lesser sanction that would vindicate the dignity of court proceedings and chasten Jaques against future misconduct. The amount of the sanction was, under all the circumstances, modest.

---

[5]Jaques emphasizes that Carroll's attorney repeatedly harassed him by posing irrelevant questions, such as questions concerning Jaques's and his firm's net worth. Jaques complains that questions concerning his net worth were irrelevant because the case was governed by Michigan law. Under Michigan law, punitive damages are not available to punish a defendant, and, therefore, a defendant's net worth is not discoverable. However, at the time of his deposition, the choice of law determination had not yet been made by the court. Jaques was deposed on February 1, 1996; the district court ruled on February 8, 1996 that Michigan law would apply in this case. Therefore, *at the time of his deposition,* questions concerning Jaques's and his firm's net worth—which Jaques refused to answer—were potentially relevant.

Jaques was sanctioned for his offensive and intimidating conduct, his disruption of discovery proceedings, and his lack of respect for the judicial process. The graphic transcript and videotape of the deposition, as well as the history surrounding the circumstances of his deposition, of which the court was well aware, provided more than enough evidence for the court's decision. The district court did not abuse its discretion in imposing sanction against Jaques.

AFFIRMED.